**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.: 07-po-01109-CBS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. DAVID MERRILL,

    Defendant.

---

**THE UNITED STATES' NOTICE OF INTENT TO USE EVIDENCE**
**PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

---

The United States through United States Attorney, Troy A. Eid, and Assistant United States Attorney, Roxane J. Perruso, submits the following notice of intent to use evidence pursuant to Federal Rule of Evidence 404(b) and a proffer of the evidence it will seek to introduce at trial:

**LEGAL STANDARD**

1.    Under Federal Rule of Evidence 404(b), evidence of "other crimes, wrongs, or acts" may be admissible for purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

2.    "Evidence of other crimes, wrongs, or acts is admissible under Rule 404(b) if (1) it is offered for a proper purpose; (2) it is relevant; (3) the probative value of the evidence is

not substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, instructs jurors to consider the evidence only for the purpose for which it was admitted." *United States v. Hubenka*, 438 F.3d 1026, 1036 (10th Cir. 2006).

3. Federal Rule of Evidence 404(b) is "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *Id.* (*quoting United States v. Tan*, 254 F.3d 1204, 1207 (10th Cir. 2001).

4. The government submits that the following evidence of other wrongs or acts is admissible under Rule 404(b) for purposes of showing knowledge and the absence of mistake or accident. This evidence is probative and not unfairly prejudicial because the "intent with which a person commits an act on a given occasion can many times be best proved by testimony or evidence of his acts over a period of time prior thereto . . . ." *United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982).

5. The evidence meets the relevancy prong because the finder-of-fact "can reasonably conclude that the acts occurred and that the defendant was the actor." *United States v. Cardall*, 885 F.2d 656, 671 (10th Cir. 1988). Finally, because this is a trial to the Court, no jury instruction regarding the use of the evidence for the purpose for which it is admitted would be necessary.

**PROFFER OF THE EVIDENCE**

6. Officer Otterness, a law enforcement officer with the United States Forest Service, would testify that on numerous occasions over the past 28 years, livestock owned by Mr. Merrill have been found grazing on National Forest land without authorization. From 1979 to 1996,

Officer Otterness gave Mr. Merrill numerous verbal warnings about keeping his livestock off of National Forest System lands. The Forest Service received many complaints during this time from local landowners regarding the trespass of Mr. Merrill's livestock. On March 8, 1996, Officer Otterness sent Mr. Merrill a letter notifying him that his livestock had been observed grazing on National Forest land and citing to the U.S. Forest Service regulation regarding unauthorized livestock and the penalties associated with violating it.

7.      Officer Otterness would testify that Mr. Merrill did not respond to the letter and that after the date of the letter, Mr. Merrill continued to allow his livestock to trespass on National Forest System lands. On September 8, 1998, Officer Otterness saw two burros owned by Mr. Merrill grazing on National Forest System lands, in the Pike National Forest. On September 16, 1998, Officer Otterness sent another letter to Mr. Merrill enclosing Violation Number F058390 charging Mr. Merrill with a violation of 36 C.F.R. § 261.7(a), allowing unauthorized livestock to enter and be in the National Forest. The Violation Notice provided that Mr. Merrill could pay a collateral forfeiture amount of $50.00. On September 18, 1998, in response to the Violation Notice, Mr. Merrill called and left a message for Officer Otterness calling him a "fascist butthead."

8.      Mr. Merrill plead "not guilty" to the 1998 Violation Notice and a trial was set for January 20, 1999. On January 12, 1999, Mr. Merrill was hospitalized and reported near death. As a result, the trial was cancelled and the charges were dismissed. Subsequently, that same year, two burros owned by Mr. Merrill were struck and killed on County Road 126.

9. The District Ranger signed a letter dated October 7, 2003, which was delivered to Mr. Merrill. The letter notified Mr. Merrill that six of his horses "have been continuously see on National Forest System Lands for the past 5 months." The letter included a bill for unauthorized use dating from May 22, 2003 to September 30, 2003. Mr. Merrill ignored both the bill and the letter.

10. On August 30, 2004, Officer Otterness would testify that he observed livestock belonging to Mr. Merrill on National Forest System lands. He documented his observations in an incident report and Supplemental Incident Report. The livestock included six horses and two burros that were in an area near Dome Rock and Longview on the North Fork of the South Platte River. Officer Otterness took photographs of the livestock in that location.

11. Dolly Goehle, a previous Forest Service employee who in 1999 resided at the Buffalo Creek Workcenter, would testify that on July 24, 1999, at 5:41 a.m. she woke up to the sound of donkey calls. When she got dressed and went outside there were two burros eating the grass and flowers. With the help of several other people she put bridles on the animals and tied them to a fence. The brand inspector was called and Mr. Merrill was informed of the location of his donkeys. At approximately 8:30 a.m., Mr. Merrill arrived with a truck and bridles. Mr. Merrill apologized, said the animals' names were Peppy and Ole Sport, and mentioned that they had been free for twenty years.

12. Dolly Goehle would also testify that on August 10, 1999, at 6:30 a.m., she let her cat out and saw the same two donkeys from July 24, 1999, in her yard. That day they stayed around for twenty to thirty minutes and then left the workcenter and stood on Highway 126

causing motorists to swerve and stop quickly to miss hitting them.  She left for work and when she arrived home at 5:30 p.m. the donkeys were in her yard again.

The government will seek to introduce the evidence summarized above at trial pursuant to Fed. R. Evid. 404(b); the evidence meets the four-pronged test for admissibility established in *Huddleston v. United States*, 485 U.S. 681, 691,92 (1988).

Dated this 10th day of June, 2007.

        TROY A. EID
        United States Attorney


        s/Roxane J. Perruso
        ***Roxane J. Perruso***
        Assistant United States Attorney
        1225 17th Street, Suite 700
        Denver, CO 80202
        Telephone 303-454-0127
        Fax 303-454-0403
        Email Roxane.Perruso@usdoj.gov
        Attorney for the Government

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

      I hereby certify that on June 10, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Roxane J. Perruso**
   Roxane.Perruso@usdoj.gov,Charisha.Cruz@usdoj.gov,Janet.Zinser@usdoj.gov,USACO.ECFCriminal@usdoj.gov,USACO.ECFCivil@usdoj.gov

**Janine Yunker**
   Janine_Yunker@fd.org,COX_ECF@fd.org

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand- delivery, etc.) indicated by the nonparticipant's name:

                                                    s/Roxane J. Perruso
                                                    *Roxane J. Perruso*