IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 07-po-01109-CBS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID MERRILL,

    Defendant.

**MEMORANDUM OF DECISION AND ORDER**

Magistrate Judge Craig B. Shaffer

    Defendant David Merrill is charged in an Information with a single violation of 16 U.S.C. § 551 and 36 C.F.R. § 261.7(a). Specifically, the government alleges that on or about April 12, 2006, Defendnt Merrill, without authority, allowed nine horses to enter and be in the National Forest System at Osprey campground in the Pike National Forest. This is a Class B misdemeanor carrying a maximum penalty of not more than six months imprisonment, a fine of not more than $5,000.00, or both, and a $25 special assessment fee. There is no right to a jury trial where the defendant is charged with a Class B misdemeanor. *See* Fed.R.Crim.P. 58(b)(2)(F). I conducted a bench trial in this case on January 28, 2008. Although not requested to do so by the parties, this Memorandum of Decision and Order contains specific findings of fact consistent with the provisions of Fed.R.Crim.P. 23(c). *See Campbell v. United States*, 373 U.S. 487, 493 (1963) (on appeal from a criminal conviction, the trial court's findings of fact may not be disturbed unless

clearly erroneous).

As a preliminary matter, the court notes the parties' agreement that Defendant Merrill has been charged with a strict liability offense. In *United States v. Unser*, 165 F.3d 755 (10th Cir. 1999), the Tenth Circuit held that *mens rea* is not a required element for a "public welfare offense." The court in *Unser* concluded that proof of criminal intent is not required

> where a federal criminal statute omits mention of intent and where it seems to involve what is basically a matter of policy, where the standard imposed is, under the circumstances, reasonable and adherence thereto properly expected of a person, where the penalty is relatively small, where the conviction does not gravely besmirch [the reputation], where the statutory crime is not one taken from the common law, and where congressional purpose is supporting.

*Id.* at 762 (citing *Holdridge v. United States*, 282 F.2d 302, 310 (8th Cir. 1960)). A grazing trespass in violation of regulations governing federal lands has been held to be a public welfare offense for which the guilty act alone makes out the crime. *See United States v. Shenise*, 43 F. Supp.2d 1190, 1201-02 (D. Colo. 1999). *But see United States v. Osguthorpe*, 13 F. Supp.2d 1215, 1217-18 (D. Utah 1998) (in a pre-*Unser* decision, held that the Forest Service regulation prohibiting "placing or allowing unauthorized livestock to enter or be in the National Forest System or other lands under Forest Service control" contained a *mens rea* requirement). Based upon my consideration of the prevailing case law and in light of the parties' stipulation at trial, I conclude that in this case the government is not required to prove specific intent, or *mens rea*, on the part of Defendant Merrill.

Based upon the evidence presented during the trial on January 28, 2008, I find the following facts beyond a reasonable doubt:

1. The Osprey campground is located in the Pike National Forest, which comprises

National Forest System lands managed by the United States Forest Service. The Osprey campground also is located in the State and District of Colorado.

2. On April 12, 2006, at approximately 5:55 p.m., United States Forest Service law enforcement officer Annette Pintado observed nine horses grazing in the Osprey campground. At the time Officer Pintado observed these horses, they did not have halters or bridles. Officer Pintado saw no one managing or supervising the horses. From past experience, Officer Pintado identified the horses at Osprey campground as animals claimed by Defendant Merrill.

3. Defendant Merrill testified that seven of the horses spotted by Officer Pintabo at Ospray campground on April 12, 2006 belonged to him.

4. Officer Pintado issued a Notice citing Defendant Merrill for a violation of 36 C.F.R. § 261.7(a).

5. Section 261.7(a) prohibits, *inter alia*, "placing or allowing unauthorized livestock to enter or be in the National Forest System or other lands under Forest Service control."

6. Under 36 C.F.R. § 261.2, "unauthorized livestock" includes "any cattle, sheep, goat, hog or equine not defined as a wild free-roaming horse or burro[1] . . . which is not authorized by permit to be upon the land on which the livestock is located and which is not related to use authorized by a grazing permit." The regulatory definition of "unauthorized livestock" excludes "noncommercial pack and saddle stock used by recreationists, travelers, other Forest visitors for occasional trips, as well as livestock to be trailed over an established driveway when there is no

---

[1]The phrase "wild free-roaming horses and burros" is defined to mean "all unbranded and unclaimed horses and burros and their progeny that have used lands of the National Forest System on or after December 15, 1971 . . . but does not include any horse or burro introduced onto the National Forest System on or after December 15, 1971 by accident, negligence or willful disregard of private ownership." *See* 36 C.F.R. § 222.20(b)(13).

3

overnight stop on Forest Services administered land." *See* 36 C.F.R. § 261.2

7. On April 12, 2006, seven of the nine horses observed by Officer Pintabo at Osprey campground were claimed by Defendant Merrill and, therefore, did not qualify as wild free-roaming horses.

8. On April 12, 2006, Defendant Merrill did not have a grazing permit issued by the United States Forest Service.

9. On April 12, 2006, Defendant Merrill was not using his animals as saddle horses or pack horses.

10. As of April 12, 2006, livestock were not authorized in Osprey campground, even if the livestock were otherwise permitted.

11. On April 12, 2006, at approximately 2:00 p.m., Defendant Merrill found his horses at the village of South Platte, Colorado, which is located north of the Ospray campground. When Defendant Merrill approached his horses to gather them and send them back to their customary grazing area near his home, the horses started moving on their own initiative south on County Road 97.

12. Defendant Merrill followed behind the horses in his vehicle, looking for an opportunity to corner or capture his animals.

13. Eventually, Defendant Merrill's horses arrived at the village of Nighthawk, Colorado, which is north of Ospray campground. Once at Nighthawk, the horses left County Road 97 and began grazing on private property.

14. Defendant Merrill had not anticipated traveling to Nighthawk in an effort to capture his livestock. Defendant Merrill left the horses at Nighthawk and returned to his home to

obtain extra lead ropes, hay, treats, and a saddle with the intent to use those items in rounding up his livestock. Defendant Merrill returned to Nighthawk at approximately 6:00 p.m. By that time, Defendant's horses apparently on their own initiative had left the grazing area in Nighthawk.

15.   Defendant Merrill continued driving down County Round 97 and found his horses grazing at the Ospray campground approximately a quarter mile from their previous location in Nighthawk. From the Ospray campground, Defendant Merrill returned the horses to his property.

At trial, Defendant Merrill suggested that on April 12, 2006, he was "trailing" his horses from the village of South Platte, thereby bringing this case under the exception in 36 C.F.R. § 261.2 for "livestock to be trailed over an established driveway when there is no overnight stop on Forest Services administered land." In the context of § 261.2, the phrase "to be trailed" reasonably presumes a plan, design or some initiative on the part of the individual responsible for the livestock. Here, Defendant Merrill testified on cross examination that he had never anticipated traveling to Nighthawk in an effort to round up his animals. Even if the phrase "to be trailed" could be liberally construed to describe the movement of Mr. Merrill and his horses from South Platte to Nighthawk, there is no evidence suggesting that Defendant Merrill took any purposeful action or had any role in the horses' movement from Nighthawk to the Ospray campground. Defendant Merrill did not "trail" his horses from the village of Nighthawk, so much as he "found" his horses at the Ospray campground. The undisputed facts establish that Defendant Merrill's horses made their own unaccompanied way to Ospray campground.

Also at trial, defense counsel argued that the government failed to prove that Defendant Merrill had "allowed" his unauthorized livestock's presence at Ospray campground, notwithstanding Defendant's earlier concession that the Information charges a strict liability

offense. Defendant's argument seemingly echoes the reasoning enunciated in *United States v. Semenza*, 835 F.2d 223 (9th Cir. 1987). In that decision, the Ninth Circuit held that 36 C.F.R. § 261.7(a) included a *mens rea* element and, therefore, was not a strict liability offense. The Ninth Circuit reached that result after reasoning that the word "allow," as used in § 261.7(a), "may mean 'to acquiesce in; to suffer; to tolerate.'" *Id.* at 224 (citing *Black's Law Dictionary* 70 (5th ed. 1979)). *See also United States v. Kent*, 945 F.2d 1441, 1446 (9th Cir. 1991) (finding that the decision in *Semenza* had construed the word "allowing" in 36 C.F.R. § 261.7(a) to imply a mental element which would require the government to prove that the defendant willfully allowed or willfully failed to prevent cattle from entering Forest Service land).

I am not persuaded by Defendant Merrill's argument. *Cf. United States v. Osguthorpe*, 13 F. Supp.2d at 1219, n.2 (observing that the decision in *Semenza* "offers no real help in determining the appropriate legal standard" under 36 C.F.R. § 261.7(a) and finding "difficulty" with the Ninth Circuit's analysis). The Ninth Circuit conceded that word "*allow* 'has no rigid or precise meaning.'" *United States v. Semenza*, 835 F.2d at 224. Indeed, *Black's Law Dictionary* cautions that the word's "import [varies] according to circumstances or context in connection with which it is used." *See Black's Law Dictionary Dictionary* 70 (5th ed. 1979). *Black's Law Dictionary* also says that "[t]o suffer an act to be done or a condition to exist is to permit or consent to it . . . [i]t implies knowledge, a willingness of the mind and responsible control or ability to prevent." *Black's Law Dictionary* 1284 (5th ed. 1979). The evidence in this case supports the finding that Defendant Merrill "suffered" his unauthorized livestock to enter onto and graze at the Ospray campground to the extent that he had responsibility for those animals and the ability to prevent the unauthorized activity. *Cf. United States v. Unser*, 165 F.3d at 762 (in

6

the case of a public welfare offense, "the accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion that it might reasonably exact from one who assumed his responsibility").

Based upon the foregoing, I find substantial and credible evidence establishing beyond a reasonable doubt that on April 12, 2006, Defendant Merrill, without authority, allowed seven horses to enter and be in the National Forest System at Ospray campground in the Pike National Forest. Accordingly, I find Defendant Merrill GUILTY of violating 16 U.S.C. § 551 and 36 C.F.R. § 261.7(a).

IT IS ORDERED that a sentencing hearing in this matter is set for **Tuesday, March 25, 2008, at 10:45 a.m.** in Courtroom A402, at the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado, at which time Mr. Merrill, his counsel and the United States shall appear personally. A final judgment will not enter until the date of sentencing, with the time for appeal commencing to run on that date.

DATED this 6th day of March, 2008.

BY THE COURT:

*s/Craig B. Shaffer*
Craig B. Shaffer
Magistrate Judge